## PECK vs. HILER.

By the terms of a lease the tenure of the demised premises was to commence on the 1st day of May, 1852. The tenant was to have the use of a certain rail road, in common with others, and was "to put the same in order above the chemical works, if he wished to use it," and the lessor reserved the use of it to himself, also. The road was entirely out of repair. The tenant used a part of it, below the chemical works, for the purposes of his business, for a short time, but he never repaired it, or in any way used the road above those works. Nothing was transported over any portion of it, after July, 1852. The lessee removed a portion of the railway, so as to prevent its use, before any part thereof was taken up by the lessor. The lessor removed a part of the rails, in April, 1853, and the lessee, in May thereafter, with knowledge of such removal, paid to the lessor the rent which accrued during that month. When the rent for the months of June, July and August was demanded of the lessee, he promised to pay it in a few days, and subsequently gave his note for the amount, without making any complaint about the removal of the rails by the lessor.

*Held* that it was fairly inferable from these facts that the lessee did not wish to use the rail road above the chemical works, and had determined to abandon, and had abandoned, the use of the whole of it, previous to the tearing up and removal of the rails by the lessor, and had by his own acts rendered it incapable of use. That consequently there was no ground for the pretext that the lessor had interfered with the beneficial enjoyment thereof by the lessee; and that though his acts might have amounted to a trespass, they did not constitute an *eviction*.

THIS was an action of ejectment, to recover possession of certain premises in Rockland county, demised by the plaintiff to the defendant, by lease dated February 19th, 1852. The complaint alleged non-payment of thirteen months' rent of premises demised by said lease, which was due to the plaintiff from the defendant at the time of the commencement of this action; also an underletting of said premises by the defendant, in violation of a covenant contained in said lease. The answer did not deny any of the allegations in the complaint, but alleged as a defense a demise of the use of a rail road leading from the demised premises, and the tearing up said rail road by the plaintiff; and also alleged the receipt by the plaintiff of rent accruing after the underletting, with a knowledge of such underletting. The reply denied the de-

mise of the use of the rail road, as a part of the demised premises, but set out a covenant occurring in such lease, after the habendum clause, and the clause reserving rent, as follows: " The said party of the second part is also to have the use of the rail road in common with others, and to put the same in order above the chemical works, if he wishes to use it." Also alleging that said rail road was, at the time of the execution of the lease, out of repair, and entirely unfit for use, and so remained until after the doing the acts complained of by the defendant, and that the defendant had never repaired such rail road above the chemical works. The reply also alleged that an action was brought by the defendant against the plaintiff, to recover damages for doing the very acts which are in this action claimed as an eviction, and that the defendant in such action recovered damages, upon which recovery a judgment was entered, and the same was paid by the plaintiff before the commencement of this action ; also that the defendant paid the plaintiff rent of said premises which accrued after the tearing up of said rails, with the knowledge on the part of the defendant, before such payment, of the removal of such rails. The allegations in the reply with reference to the former action for the same cause as is claimed as a defense in this action, and with reference to the payment of rent accruing after the alleged eviction, with knowledge of such acts, were admitted on the trial ; also the tearing up the rails, and the receipt of rent by the plaintiff. On the first trial, in October, 1854, the plaintiff recovered a judgment, which was reversed by this court at general term, and a new trial ordered. A new trial was had in October, 1858, before Justice EMOTT, without a jury, who ordered judgment in favor of the plaintiff, from which the defendant appealed. In addition to the facts which appeared on the former trial, it was proved, on the second trial, that the defendant removed a portion of the railway in question, so as to prevent its use, before the plaintiff removed any part thereof. Also, that after the removal of the rails by the plaintiff, the defendant paid the rent of said premises for the

Peck *v.* Hiler.

month of April, 1853, without objection, and subsequently gave his note for the rent of the premises for June, July and August, 1853, part of the rent in question, without objection, which note was not paid. Also that the defendant, when proceeded against by the plaintiff under the statute relating to summary proceedings, to recover possession of the premises in question, on account of non-payment of a portion of the rent claimed in this action to be due, alleged payment of three months' rent claimed to be due, by the note above mentioned, and tendered the amount of the 4th month's rent, also involved in this action, and made no other answer in such proceedings.

*C. Frost,* for the respondent.

*George W. Stevens,* for the appellant.

*By the Court,* LOTT, P. J. It was decided in this case, as reported in 24 *Barbour,* 178, that the rail road mentioned in the pleadings was a part of the demised premises, and that the acts of the plaintiff, as then disclosed, in tearing up and removing the rails from the road, constituted a partial eviction. The opinion of Justice EMOTT, who fully discussed the question, was based on the assumption that the rail road, at the time of the commission of those acts, was in actual use by the defendant, under the lease. A new trial has since been had before him, and upon the facts and circumstances then presented it appeared such was not the case, and he came to the conclusion that the eviction was not established, and ordered judgment for the plaintiff.

The question now to be determined is, whether he was right in that conclusion. The principle established by the decision referred to is, that any intentional and injurious interference by a landlord, with the use or beneficial enjoyment, by the tenant, of any portion of the demised premises, is an eviction. The act must be more than a mere trespass. Ch. J. Jervis, in *Upton* v. *Townsend,* and *Upton* v. *Greenless,* (33 *Eng. L. and Eq. Rep.* 212, &c.) says, " It must be something of a more

permanent character, done by the landlord, with the intention of depriving the tenant of the enjoyment of the whole or a part of the premises, and it is for the jury to say whether the act was done with such intention." . The opinion of the other judges was to the same effect. (*See also Cowper*, 242; *Lewis* v. *Payne*, 4 *Wend.* 426; *Etheridge* v. *Osborn*, 12 *id.* 529; *Lawrence* v. *French*, 25 *id.* 443; *Ogilvie* v. *Hull*, 5 *Hill*, 52; *Bennet* v. *Bittle*, 4 *Rawle*, 339; *Edgerton* v. *Page*, 18 *How. Pr. R.* 359; *Notes to* 3 *Kent's Com.* 9th ed. p. 609.) Testing the case as now presented by this principle, we are of opinion that the judgment below was fully warranted. The tenure of the demised premises commenced on the 1st day of May, 1852. The tenant was " to have the use of the rail road in common with others, and put the same in order above the chemical works, if he wished to use it," and the landlord reserved the use of it to himself also. Now it appears by the evidence that the road was entirely out of repair; that the defendant used part of it, below the chemical works, for the purposes of his business, for a short time, but that he never repaired it, or in any way used the road above those works; that nothing was transported over any portion, after July, 1852, and that it would have cost more to put the same in repair than to cart the defendant's goods where they were wanted. The judge also found as a fact, on sufficient testimony to justify his finding, that the defendant removed a portion of the railway so as to prevent its use, before any part thereof was taken up by the plaintiff. The removal by the defendant took place in the summer, and latter part of the season, in 1852, and that by the plaintiff in April, 1853. The rent reserved by the lease was payable in equal monthly payments, and it was admitted by the defendant that he paid the plaintiff the rent which accrued during the month of May, after the removal of the rails, with knowledge of such removal, before and at the time of payment. It also appeared that when the rent for the months of June, July and August was demanded of the defendant, he said that he would pay it in a few days, and he subsequently

gave his note therefor, but which has not been paid, and nothing was said by him at any of those interviews about the removal of the rails by the plaintiff.

It is fairly inferable from all these facts and circumstances, not only that the defendant did not wish to use the rail road above the chemical works, but also that he had determined to abandon the use of the whole of it entirely, long before the tearing up and removal of the rails by the plaintiff in April, 1853. His use of it, in fact, ceased as early as August, 1852, and it was never resumed; not only so, but he had by his own acts rendered it incapable of use. There is therefore no ground for the position or pretext that the plaintiff has interfered with the beneficial enjoyment thereof by the defendant. His acts may have amounted to a trespass, for which a compensation in damages has been given, but do not constitute an eviction.

In this view of the case, the evidence, taken subject to exceptions, was admissible, and the judgment based thereon was right, and must be affirmed with costs.

[KINGS GENERAL TERM, February 13, 1860. *Lott, Emott* and *Brown,* Justices.]